DECISION
The Petitioner, a convicted sex offender, was classified by the Sex Offender Review Board ("SORB" or "Board") as a Level 3 risk to re-offend under § 11-37-1 et seq of the Rhode Island General Laws known as the Sex Offender and Community Notification Act. ("Act") Upon receipt of notice of his risk level, he filed a timely objection to same and requested a hearing to review his level of notification. A hearing was conducted by the Court in accordance with § 11-31-1-16 of the Act.
 Facts and Travel
Petitioner was before the Court on December 10, 1998 on charges of two counts of second degree sexual assault. He entered a nolo plea, received a sentence of 10 years which was suspended, and placed on probation with a condition of probation being sex offender registration and counseling. Subsequently, on October 20. 2001 he was charged with simple assault, received a 1 year sentence which was suspended, found to be a violator of the 1998 sentence and had two years of that sentence imposed. The charge of simple assault involved conduct with sexual overtones, namely assault on a female with sexual intent.
As a result of his plea and subsequent conviction, in addition to sex offender counseling and registration, he was referred to the Sex Offenders Review Board ("SORB"), and was determined to be a risk Level 3 or high risk to re-offend. This risk level requires in addition to the registration required, that organizations and members of the public likely to encounter the petitioner be notified of his presence in the community. The Petitioner objected to his classification and requested a hearing.
 Standard of Review
In any proceeding under R.I.G.L. § 11-37.1 entitled Sexual Offender Registration and Community Notification Act, the State has the burden of presenting a prima facie case that justifies the proposed level and manner of notification.
The statute defines a prima facie case to mean (1) a validated risk assessment tool has been used to determine the risk of re-offense; and (2) reasonable means have been used to collect the information used in the validated assessment tool.
Upon presentation of a prima facie case, the Court shall affirm the determination of the level and nature of the community notification, unless it is persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is proposed to be accomplished is not in compliance with this chapter and the guidelines adopted pursuant to this chapter.
 Analysis
The State introduced the record of the Sex Offender Review Board which included the results of the Static-99[1], a valid risk assessment tool as well as additional information including the criminal record of the petitioner, police reports, institutional, probation/parole supervision and treatment information. They also introduced a supplemental report dated 6/3/05, stating additional factors and/or characteristics of the petitioner which the Board considered in classifying the petitioner as a Level 3 risk. The Board considered the nature of the offense, — use of violence, planned, calculated and predatory offense, and a criminal record of stalking and sexually aggressive behavior against victims in public places, and a criminal record of domestic violence. On the Static 99 risk assessment tool, the Petitioner scored a 5 which shows him as a moderate to high risk to re-offend.
The Static-99 is an instrument designed to assist in the prediction of sexual and violent recidivism for sexual offenders. This risk assessment instrument was developed by Hanson and Thornton (1999) based on follow-up studies from Canada and the United Kingdom with a total sample size of 1,301 sexual offenders. The Static-99 consists of 10 items and produces estimates of future risk based upon the number of risk factors present in any one individual. The risk factors included in the risk assessment instrument are:
 • the presence of prior sexual offenses
 • having committed a current non-sexual violent offense
 • having a history of non-sexual violence
 • the number of previous sentencing dates
 • age less than 25 years old
 • having male victims
 • having never lived with a lover for two continuous years
 • having a history of non-contact sex offenses
 • having unrelated victims
 • having stranger victims.
The recidivism estimates provided by the Static-99 are group estimates based upon reconvictions and were derived from groups of individuals with these characteristics. As such, these estimates do not directly correspond to the recidivism risk of an individual offender. The offender's risk may be higher or lower than the probabilities estimated in the Static-99 depending on other risk factors not measured by this instrument.
Mr. Nichols scored a 5 on this risk assessment instrument. Individuals with these characteristics, on average, sexually re-offend at 33% over five years and at 38% over ten years. The rate for any violent recidivism (including sexual) for individuals with these characteristics is, on average, 42% over five yeas and 48% over ten years. Based upon the Static-99 score, this places Mr. Nichols in the Moderate-High (score of 4 or 5, between the 62nd and the 88th percentile).
After reviewing the risk assessment tool and other documentation, the Court found that the state established a prima face case. The Petitioner was afforded an opportunity to persuade the Court that the level of notification established by the Board and the manner of notification was not in compliance with the statute.
The defendant presented James Moody ("Moody"). Moody is presently treating the Petitioner at New Dimensions for Men and was at the time of his testimony a member of the SORB that classified the Petitioner. Moody, according to a report dated 6/13/05, recused himself from the classification vote presumably because he was providing treatment.[2]
(Peter Loss, head of the sexual offender treatment program at the ACI also recused himself from the vote, presumably because the petitioner was in the program while incarcerated.)[3]
Moody testified that in the course of treating the Petitioner, and from what he (Moody) observed and what the Petitioner has done, the Petitioner controls himself well. He stated that the Petitioner has "done what has to be done," although he failed to note petitioner is court ordered to counseling.
Moody also noted that the petitioner attended Peter Loss' program while incarcerated and the he has done well in that program as well as Moody's program which meets weekly. Petitioner has attended 48 weeks a year and has over 120 hours since his release.
His opined that based on what he determined the petitioner's participation in the program, the petitioner's risk level should be a one or low risk, while acknowledging the one "cannot successfully predict who will or who won't recidivate."
When confronted with the fact that the petitioner, while serving a suspended sentence imposed in 1998 for second degree sexual assault, assaulted a woman in 2001 in the same manner as in 1998, Moody was asked if this impacted his opinion.
Specifically he was asked if this instance of recidivism was a "valid predictor of risk to re-offend" he answered that "he was not sure if this was a valid predictor". When pressed on the issue of whether a similar act was the best predictor of petitioner's risk to re-offend was the recidivist act in 2001, he responded he "did not know." When asked about the petitioner's score of 5 on the Static-99 his response was "I've never been a Static-99 fan."
This response the Court finds to be somewhat shocking in that the SORB consistently uses this risk assessment tool in deciding the risk to re-offend. One would think that as the professional, a "sex offender treatment specialist" appointed to the board because of his expertise would have challenged the use of this tool in assessing risk. His opinion was negatively impacted by his responses to questions of the state's attorney, as well as those of the Court.
The SORB considered the results of the Static 99 risk assessment tool and reviewed police reports, BCI reports and other documents in making its assessment. They considered other factors including termination from the sex offender program, Petitioner's lengthy criminal record, institutional disciplinary records, in addition to his risk assessment tool score of 5 which placed the Petitioner at the moderate to high level risk to re-offend.
The Court, having found a prima facie case had been established, is not persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is imposed was not in compliance with R.I.G.L. § 11-37.1-16. The testimony of defendant's expert witness did not support a reduction in the level of notification.
 Conclusion
Based on the foregoing, the decision of the SORB classifying Petitioner as a Level 5 is confirmed. The risk of re-offending is high and in addition to registration and notification, the organizations in the community and members of the public likely to encounter petitioner should be notified.
[1] The STATIC-99 was developed by R. Karl Hanson, Ph.D. of the Solicitor General Canada and David Thornton, Ph. D., at that time, of Her Majesty's Prison Service, England. The STATIC-99 was created by amalgamating two risk assessment instruments. The RRASOR (Rapid Risk Assessment of Sex Offender Recidivism), developed by Dr. Hanson, consists of four items: (1) having prior sex offences, (2) having a male victim, (3) having an unrelated victim, and (4) being between the ages of 18 and 25 years old. The items of the RRASOR were then combined with the items of the Structured Anchored Clinical Judgment — Minimum (SACJ-Min), an independently created risk assessment instrument written by Dr. Thornton (Grubin, 1998). The SACJ-Min consists of nine items: (1) having a current sex offense, (2) prior sex offenses, (3) a current conviction for non-sexual violence, (4) a prior conviction for non-sexual violence
[2] Moody, as a member of the SORB should recuse himself from all matters involving defendants whose cases are considered by the SORB wherein he is involved in treatment of the defendant. Recusal should act as a bar to any involvement in the case including submission of written reports and testimony at hearings.
[3] Moody and Loss are members of the SORB pursuant to R.I.G.L. § 11-3-7,1-6 which states:
 "At least one member of the SORB shall be a sex offender treatment specialist."
While Moody and Loss possess this qualification, they should not vote on cases wherein the convicted sex offender is a client or enrolled in any programs involving them. Furthermore, recusal should apply to any written or testimonial communications on behalf of petitioners either supporting or contradicting the Board's findings.
This recusal also raises another issue when recusal takes place — namely, is the Board, in voting on a convicted sex offender, legally constituted if it lacks a qualified sex offender treatment specialist when both Moody and Loss recuse.
Finally, since they are involved in treatment of a large number of sex offenders who appear before the Board, they should decline or reconsider the appointment to serve on the Board.